UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESSICA BRUNELLE, and
JONATHAN ADELSTEIN,

          Plaintiffs,

  v.

PEACEHEALTH, and ROBERT AXELROD,

          Defendants.

CASE NO. 3:22-cv-05499-BHS

ORDER

This matter is before the Court on Defendant Robert Axelrod's Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss. Dkt. 16. Axelrod moves to dismiss Plaintiffs Jessica Brunelle and Jonathan Adelstein's whistleblower retaliation claims advanced against him under the False Claims Act ("FCA"). Because the FCA does not authorize such claims to be advanced against individual supervisors like Axelrod, the motion to dismiss is granted.

**I. BACKGROUND**

Defendant PeaceHealth, a Washington-based nonprofit healthcare provider, employed Plaintiff Brunelle, contracted with Plaintiff Adelstein to work as a locum

tenens psychiatrist, and currently employs Defendant Axelrod. *See* Dkt. 1, ¶¶ 5, 6, 7, 9, 11, 28. Brunelle was a manager at the Behavioral Health Department at PeaceHealth's St. John Medical Center. *Id.* ¶ 5. Adelstein worked primarily at St. John Medical Center. *Id.* ¶ 6. Axelrod is a psychiatrist who is the Systems Medical Director of Behavioral Health for all of PeaceHealth's hospitals and clinics. *Id.* ¶ 9, 11.

When Brunelle and Adelstein worked at St. John Medical Center, they raised various concerns about the conduct of another PeaceHealth employee, Jerad Shoemaker, who held a leadership position in the Behavioral Health Department at St. John Medical Center. *See id.* ¶ 36. For instance, Brunelle met with Axelrod and discussed an incident during which Shoemaker billed for services performed on a patient that he had not seen. *Id.* ¶¶ 65–67. During this meeting, Axelrod "took steps to insulate Dr. Shoemaker from culpability by insisting on meeting with Dr. Shoemaker without anyone else present." *Id.* ¶ 68. At a subsequent meeting, Axelrod accused Brunelle of "attempting to 'entrap'" Shoemaker. *Id.* ¶ 72.

Adelstein separately reported to PeaceHealth's Office of Organizational Integrity that Shoemaker had been billing for patients that he had not seen. *Id.* ¶ 73. Brunelle and Adelstein requested an audit into Shoemaker's billing practices to stop violations of the FCA. *Id.* ¶¶ 74, 75. However, PeaceHealth and Axelrod refused to conduct such an audit. *Id.* ¶ 75. Thereafter, Brunelle and Adelstein discovered that Shoemaker submitted false claims to the Centers for Medicare and Medicaid Services. *Id.* ¶ 76.

Brunelle and Adelstein allege that both Axelrod and PeaceHealth retaliated against them for raising concerns about Shoemaker's conduct. They allege that, after Adelstein

reported this conduct, Axelrod "moved to discontinue Dr. Adelstein's presence on the unit." *Id.* ¶ 79. Specifically, Axelrod informed Adelstein that, because PeaceHealth hired a new locums nurse practitioner, Adelstein was no longer needed for inpatient coverage. *Id.* Axelrod stated this even though the nurse was less experienced than Adelstein. *Id.* Axelrod then cancelled Adelstein's shifts that were scheduled during the months of September and October 2021. *Id.*

Adelstein subsequently planned to see only one patient per shift during the months before September 2021. *Id.* ¶ 82. After learning of this plan, Axelrod ordered him to see eight patients per day. *Id.* Adelstein reminded Axelrod of when he stated that Adelstein was no longer needed for inpatient coverage, and Axelrod responded that Adelstein was "imagining things." *Id.* Adelstein stated that he thought that Axelrod was "covering up" for Shoemaker. *Id.* ¶ 83. Axelrod then accused Adelstein of "blackmailing" him and stated that he would "file a grievance against [him] that will haunt [his] record forever." *Id.* ¶ 84. Axelrod told others at PeaceHealth that Adelstein would no longer be working there and that he was not a physician in good standing with the institution. *Id.* ¶ 98. In November 2021, a PeaceHealth employee informed Adelstein that "PeaceHealth ha[d] made the decision to no longer utilize [his] services." *Id.* ¶ 143.

Plaintiffs allege that Axelrod retaliated against Brunelle by "actively working to diminish [her] position in the department, and taking steps to keep [her] out of essential conversations." *Id.* ¶ 115. For example, Axelrod did not include Brunelle in some email messages regarding certain policies or practices at St. John Medical Center, he stopped sharing information with Brunelle from meetings that he attended, and he "removed"

ORDER - 3

Brunelle from invitations to various meetings. *Id.* ¶¶ 116, 125, 167. Axelrod also directed Brunelle to not discuss any concerns about him with anyone other than her supervisor and stated that, if she did not follow this directive, he was "prepared to take action against her." *Id.* ¶ 117. Brunelle subsequently resigned from PeaceHealth. *Id.* ¶ 177.

Brunelle and Adelstein sued PeaceHealth and Axelrod, alleging against each claims for whistleblower retaliation under the FCA, 31 U.S.C. § 3730(h), whistleblower retaliation under RCW 49.60.210, breach of contract, wrongful discharge in violation of Washington public policy, and aiding unfair practices in violation of RCW 49.60.220. *Id.* ¶¶ 183–236. Axelrod moves under Fed. R. Civ. P. 12(b)(6) to dismiss only the FCA whistleblower retaliation claims. Dkt. 16.

## II. DISCUSSION

Axelrod moves to dismiss the FCA whistleblower retaliation claims against him, asserting that 31 U.S.C. § 3720(h) does not authorize such claims to be advanced against individual supervisors like himself. Dkt. 16 at 5. Brunelle and Adelstein oppose this motion, contending that (1) the Court should interpret the FCA to allow for whistleblower retaliation claims to be brought against individual supervisors like Axelrod, (2) summary judgment would be a more appropriate stage to evaluate Axelrod's arguments, (3) they properly advance an FCA retaliation claim against Axelrod because he "had power over their employment relationship," and (4) the Court should look to the definitions of "employer" in both the Fair Labor Standards Act and the Washington Law Against Discrimination to determine whether Axelrod was an employer under the FCA. Dkt. 17 at 3–8.

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true the complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

"The False Claims Act was enacted 'with the purpose of [combating] widespread fraud by government contractors who were submitting inflated invoices and shipping faulty goods to the government.'" *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d 838, 844 (9th Cir. 2002) (alteration in original) (quoting *United States ex rel.*

*Hopper v. Anton*, 91 F.3d 1261, 1265–66 (9th Cir. 1996)). To this end, it "protects 'whistle blowers' from retaliation by their employers." *Id.* at 845. Specifically, the FCA provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

In 2009, the FCA was amended to expressly provide relief for contractors and agents in addition to employees. *Irving v. PAE Gov't Servs., Inc.*, 249 F. Supp. 3d 826, 830–31 (E.D. Va. 2017). The key linguistic differences from the pre-2009 version of this statute are emphasized below:

> Any *employee* who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms or conditions of employment *by his employer* because of any lawful acts done by the employee on behalf of the employer or others in furtherance of an action under this section . . . shall be entitled to all relief necessary to make the employee whole.

*Id.* (emphasis in original) (quoting 31 U.S.C. § 3730(h) (2003)).

The parties agree that the Ninth Circuit has not addressed whether the 2009 amendment to this statute authorized whistleblower retaliation claims against individual supervisors like Axelrod. Dkt. 16 at 7; Dkt. 17 at 1–2. They also agree that the majority of courts to have analyzed this issue have concluded that it did not. Dkt. 16 at 7–9 (collecting cases); Dkt. 17 at 3; Dkt. 18 at 2.

For several reasons, the cases concluding that § 3730(h)(1) does not provide for individual supervisory liability are more well-reasoned than the cases concluding otherwise. First, as explained by the court in *Irving*, "by omitting the phrase 'by his employer,' Congress simply meant to recognize the fact that agents and contractors, which were added to the class of potential plaintiffs in 2009, are not entities controlled or directed by an 'employer.'" 249 F. Supp. 3d at 831. As a result, "the omission of the phrase 'by his employer' was a grammatical necessity, not a substantive revision," and this omission was "not for the purpose of permitting a plaintiff to sue his fellow employees and supervisors, but to ensure that an agent can bring an FCA action against his principal and a contractor can bring an FCA action against the entity with whom the contractor contracted." *Id.* at 831–32.

Second, this interpretation is supported by the statute's legislative history, which reflects that the 2009 amendment was intended to "remedy fraud and abuse arising out of the conflicts in Iraq and Afghanistan" where "the federal government found it increasingly necessary to rely on the use of independent contractors, who in turn, often hired subcontractors and agents to perform necessary governmental tasks." *Id.* at 832 (citing H.R. Rep. No. 111–97 (2009); S. Rep. No. 110–507, 110th Cong., 2nd Session (Sept. 25, 2008)). "Notably, . . . the legislative history includes no reference to, nor any discussion of, expanding the class of potential defendants under § 3730(h) to include a corporation's directors or employees, and consistent with this, the House and Senate Reports are wholly silent as to any policy reason for doing so." *Id.*

Third, this reading of the statute is supported by the caselaw in existence prior to the 2009 amendment. *See Zuress v. Donley*, 606 F.3d 1249, 1253 (9th Cir. 2010) ("We presume that Congress is familiar with controlling precedent and expects that its enactments will be interpreted accordingly."). "At the time of the 2009 amendment, several courts had held that the use of the term 'employer' in the predecessor statute precluded liability for individuals who were not employers of the whistleblower." *United States v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 814 (N.D. Cal. 2014) (collecting cases); *accord Howell v. Town of Ball*, 827 F.3d 515, 530 (5th Cir. 2016) ("Before the passage of the 2009 amendments, federal courts uniformly held that the FCA created a cause of action against only a plaintiff's employer."). As such, the Court declines to rule that "Congress overturned this precedent, not by the insertion of express language expanding liability, but only by mere implication." *Id.*

Brunelle and Adelstein cite *Laborde v. Rivera-Dueno*, 719 F. Supp. 2d 198 (D.P.R. 2010), in support of their claim that the FCA authorizes whistleblower retaliation claims against individual supervisors. Dkt. 17 at 4. In that case, a defendant moved to dismiss an FCA retaliation claim, asserting that the statute did not authorize such claims against individual supervisors. *Laborde*, 719 F. Supp. 2d at 205. The court initially denied the motion, reasoning that there was an absence of First Circuit guidance on the issue and that the cases relied upon by the defendant analyzed an outdated version of the statute. *Id.* However, Brunelle and Adelstein fail to acknowledge that the court subsequently granted the defendant's motion for reconsideration on the issue, in part because the defendant was not an "employer" under the FCA. *Laborde v. Rivera-Dueno*,

No. 09-1368 (JP), 2011 WL 814965, at *1–2 (D.P.R. Mar. 4, 2011). Thus, *Laborde* does not support Brunelle and Adelstein's argument.

Brunelle and Adelstein next cite to *Weihua Huang v. Rector & Visitors of the University of Virginia*, 896 F. Supp. 2d 524 (W.D. Va. 2012), and *United States of America ex rel. Moore v. Community Health Services, Inc.*, No. 3:09cv1127 (JBA), 2012 WL 1069474 (D. Conn. Mar. 29, 2012). Dkt. 17 at 4–5. In both cases, the courts concluded that the elimination of the term "employers" in § 3730(h) through the 2009 amendment authorized retaliation claims against supervisors in their individual capacities. *Weihua Huang*, 896 F. Supp. 2d at 548 n.16; *Moore*, 2012 WL 1069474, at *9.

However, both *Weihua Huang* and *Moore* contain cursory interpretations of § 3730(h)(1) that have been properly rejected by other courts. *See Monsour v. New York State Off. for People with Developmental Disabilities*, No. 1:13-CV-0336 (TJM) (CFH), 2014 WL 975604, at *11 (N.D.N.Y. Mar. 12, 2014) (declining to follow *Moore* because it "contains a 'one sentence analysis' that has been rejected both within and outside this Circuit"); *Elkharwily v. Mayo Holding Co.*, 955 F. Supp. 2d 988, 995 (D. Minn. 2013), *aff'd*, 823 F.3d 462 (8th Cir. 2016); *United States ex rel. Karvelas v. Tufts Shared Servs., Inc.*, 433 F. Supp. 3d 174, 180–81 (D. Mass. 2019) (declining to follow both *Weihua Huang* and *Moore* because the plain language of the statute and the legislative history demonstrate "that FCA retaliation claims do not lie against defendants in their individual capacities").

Brunelle and Adelstein additionally cite to *McKenna v. Senior Life Management*, 429 F. Supp. 2d 695 (S.D.N.Y. 2006). Dkt. 17 at 5. In that case, the court denied as premature an individual defendant's motion to dismiss a relator's FCA retaliation claim because "questions of fact" existed as to whether the defendant could "be viewed as relator's *de facto* employer, as alleged in the amended complaint." *McKenna*, 429 F. Supp. 2d at 700. Relying on this language, Brunelle and Adelstein assert that "[s]ummary judgment would be a more appropriate stage to evaluate Defendant Axelrod's arguments." Dkt. 17 at 5.

But as Axelrod persuasively asserts, *McKenna* predates the 2009 amendment to § 3730(h); "[t]he term 'de facto employer' is found nowhere in the text of the former (or current) statute, and the [*McKenna*] court declined to engage in any statutory interpretation or examination of the statute's legislative history." Dkt. 18 at 6. For these reasons, *McKenna* is of no aid to Brunelle and Adelstein.

Brunelle and Adelstein also assert that they properly advance an FCA retaliation claim against Axelrod because he "had power over their employment relationship." Dkt. 17 at 6. Yet they do not cite to any factual allegations plausibly showing that either of them was an employee, contractor, or agent to Axelrod—a showing that is required to advance a claim under § 3730(h)(1).

Brunelle and Adelstein finally contend that Axelrod is, in fact, an employer under the FCA, relying on the definitions of "employer" under both the Fair Labor Standards Act and the Washington Law Against Discrimination. Dkt. 7–8. It goes without saying that these definitions have no bearing on the meaning of the term as it is used in the FCA.

To survive Axelrod's motion to dismiss, Brunelle and Adelstein must show that they advanced a "cognizable legal theory" against him. *Balistreri*, 901 F.2d at 699. As explained, the FCA does not authorize retaliation claims against supervisors in their individual capacities. Therefore, they fail to meet their burden. Accordingly, Axelrod's motion for summary judgment on this issue is GRANTED and Brunelle and Adelstein's FCA whistleblower retaliation claims against him are DISMISSED with prejudice.

### III. ORDER

Therefore, it is hereby **ORDERED** that Axelrod's Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss, Dkt. 16, is **GRANTED**. Brunelle and Adelstein's FCA whistleblower retaliation claims against him are **DISMISSED with prejudice**.

Dated this 6th day of January, 2023.

BENJAMIN H. SETTLE
United States District Judge